**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

      Farrin Ullah,

                  Debtor.
----------------------------------------------------------X

Chapter 11

Case No. 15-12737 (SCC)

# DECISION AND ORDER GRANTING MOTIONS FOR RELIEF FROM STAY

Before the Court are two motions for relief from the automatic stay filed on January 19, 2016, one filed by the Columbia Condominium (the "Condominium") [Docket No. 36] (the "Condominium Motion") and the other filed by Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee for RMAC REMIC Trust, Series 2009-9 ("Wells Fargo") [Docket No. 39] (the "Wells Fargo Motion," and, together with the Condominium Motion, the "Motions"). In support of the Condominium Motion, the Condominium filed the Declaration of Vincent J. Roldan [Docket No. 38] (the "Roldan Declaration") and the Affidavit of Michael Zerka, General Manager of the Condominium [Docket No. 37] (the "Zerka Affidavit"). On February 16, 2016, the above-captioned debtor (the "Debtor") filed an objection to each of the Motions [Docket Nos. 47 and 48]. A hearing was held on the Motions on February 25, 2016 (the "Hearing").[1]

---

[1] At a hearing held in this case on January 5, 2016, the Court ordered that a representative from Wells Fargo and a representative from Rushmore Loan Management Services, LLC ("Rushmore"), loan servicer to Wells Fargo, be present at the hearing on the Wells Fargo Motion scheduled for February 25, 2016, for the purpose of attesting to, among other things, the possession of the Note and Mortgage (as defined below) by Wells Fargo. On February 3, 2016, counsel for Wells Fargo and Rushmore filed a letter [Docket No. 40] requesting that the Court permit a representative of Rushmore to attend the February 25, 2016 hearing on behalf of both Rushmore and Wells Fargo in the interest of costs and because Rushmore, as loan servicer, has possession of the books and records of Wells Fargo and has power of attorney to act on behalf of Wells Fargo with respect to the Debtor's loan. A copy of the aforementioned power of attorney was annexed to the letter. On February 11, 2016, the Court granted the request set forth in the letter [Docket No. 44].

1

**Background**

The Debtor filed her chapter 11 case *pro se* on October 6, 2015 (the "Petition Date"), halting a foreclosure sale scheduled for October 7, 2015.  The Debtor owns two contiguous condominium units, Unit 25E and Unit 25F, located at 275 West 96th Street, New York, New York (together, the "Units").  At the time the Debtor filed for bankruptcy, three foreclosure actions were pending against her: (i) an action commenced by Wells Fargo in the United States District Court for the Southern District of New York with respect to Unit 25E (S.D.N.Y. Case No. 13-0485) (the "District Court Action"); (ii) an action commenced by Bank of New York in the New York Supreme Court with respect to Unit 25F (N.Y. Sup. Ct. Case No. 08-117054), and (ii) an action commenced by the Condominium in the New York Supreme Court with respect to both Unit 25E and Unit 25F (N.Y. Sup. Ct. Case No. 153517/2013) (the "Condominium Action").

The Debtor has stated that she is currently unemployed, and her monthly operating reports filed with this Court support that fact.  Based on the operating reports on file as of the date of the filing of the Motions, the Debtor receives (i) $3765 per month in alimony, (ii) $650 per month in social security, and (iii) cash that appears to be gifted to her.  (*See* Docket Nos. 33 and 34.)  Aside from Wells Fargo, Bank of New York, and the Condominium, the Debtor has few other creditors.  On her schedules [Docket No. 18], she lists (i) two creditors with a combined $12,672.11 in unsecured claims and (ii) two tax claims that total $32,125.53 in the aggregate.

**The Condominium**

By the Condominium Motion, together with the accompanying declaration and affidavit, the Condominium sets forth certain basic facts which have not been contested by the Debtor.  As of the date of the Condominium Motion, the monthly charges for Unit 25E were $1567.60 with a

2

current additional capital assessment of $436.20; and the monthly charges for Unit 25F were $1174.31 with a current capital assessment of $326.84. The Debtor has failed to pay the common charges and capital assessments due on Units 25E and 25F since on or about May 1, 2007 through the present date.

According to the Condominium, as of the date of the Condominium Motion, the Debtor allegedly owed the Condominium a total of $816,417 on Unit 25E and a total of $530,750 on Unit 25F. The Debtor's schedules [Docket No. 18] reflect lower amounts, stating that the Condominium has a secured claim of $600,000 with respect to Unit 25E and a secured claim of $400,000 with respect to Unit 25F.

The Condominium has a lien on file with the City of New York (the "Lien") for all common charges and assessments to date. (*See* Roldan Decl., Ex. C.) On October 8, 2014, the court in the Condominium Action entered summary judgment in favor of the Condominium and struck the Debtor's affirmative defenses. (*See* Roldan Decl., Ex. G.) Pursuant to the decision of the state court, the Condominium was entitled to a referee to compute and ascertain the amount due on the Liens to be foreclosed and to report on whether the Units should be sold in one or in separate parcels. (*See id.*) Accordingly, the Condominium submits that it holds a prepetition judgment on its claims to foreclose liens against the Debtor for unpaid common charges and special assessments, with the only remaining issues being the amount of damages and whether the Units should be sold together or separately.

By the Condominium Motion, the Condominium asserts that the Debtor is a "combative condominium owner who refuses to comply with her basic duties as a condominium owner,"[2] and it cites to numerous instances of improper maintenance of the Units, unauthorized attempts to rent out the Units, and other incidents which the Condominium asserts support its allegations

---

[2]    Condominium Motion, p.5.

of diminution of the value of its collateral and further support its request for relief from the stay to proceed with the Condominium Action.[3]

**Wells Fargo**

Wells Fargo is the holder of a mortgage, dated November 21, 2006, in the amount of $880,750.00 in principal amount, secured by Unit 25E. The monthly mortgage payments owed to Wells Fargo with respect to Unit 25E are $7,199.46 per month. The Debtor is in default on the note and mortgage with respect to Unit 25E, having not made any payments due since August 1, 2008. Per the "Relief from Stay Worksheet" filed by Wells Fargo with the Wells Fargo Motion, Wells Fargo asserts that it was owed $1,720,902.53 as of the Petition Date. In her schedules, filed on October 20, 2015 [Docket No. 18], the Debtor indicates that Unit 25E had a value of $1,410,000 as of the Petition Date.

In the District Court Action, the Honorable J. Paul Oetken issued a decision on June 15, 2015 granting Wells Fargo summary judgment of foreclosure with respect to Unit 25E (the "District Court Decision"). (*See* Wells Fargo Motion, Ex. C.) A Judgment of Foreclosure and Sale was entered by the District Court on July 7, 2015. After the Debtor moved for reconsideration of the District Court Decision, Judge Oetken denied the motion. (*See* Wells Fargo Motion, Ex. D.) The Debtor appealed the Judgment of Foreclosure and Sale, and the Court of Appeals for the Second Circuit dismissed such appeal. (*See* Wells Fargo Motion, Ex. E.) The Debtor has filed an appeal with the Supreme Court of the United States and has sought a stay. At the Hearing, counsel for Wells Fargo represented to the Court that the Debtor's request for a stay was denied by the Supreme Court.

---

[3]    Condominium Motion, p.2.

4

**Discussion**

    **Standing**

Because the Debtor has repeatedly stated on the record of the hearings held in this case and in filed objections that she does not believe Wells Fargo is the true holder of the mortgage and the note with respect to Unit 25E and thus does not have the requisite standing to enforce the subject mortgage debt and to seek to foreclose, the Court has independently reviewed the evidence submitted on this point: copies of the Mortgage, the Note, the assignments, and the recording documents, all of which were filed as exhibits to the Wells Fargo Motion. In addition, the Court has reviewed the District Court Decision, in which Judge Oetken specifically considered the standing issues raised by Ms. Ullah and found that Wells Fargo has standing to enforce the note and mortgage for Unit 25E.[4] At the Hearing on the Motions, the Court was also prepared to hear testimony from a representative of Rushmore and to examine the original copies of the Note and Mortgage brought to the Hearing for purposes of the Court's examination; however, due to the Debtor's unacceptable behavior directed at counsel and the Court during the Hearing, the Hearing concluded abruptly before the Court had the opportunity to hear testimony. (*See* Transcript of February 25, 2016 hearing [Docket No. 50].)

Given the District Court Decision, this Court's consideration of the standing issue is unnecessary; notwithstanding, the Court agreed to independently review the issue as an accommodation to the Debtor. After considering all of the evidence presented, the Court independently finds as follows with respect to the ownership of the Note and Mortgage on Unit 25E:

---

[4]     Judge Oetken found that Wells Fargo physically possesses the Note secured by the Mortgage (each as defined herein), a copy which Wells Fargo attached to the amended complaint in the District Court Action and the original which the District Court viewed at a hearing. District Court Decision at 9 (Wells Fargo Motion, Ex. C).

5

On November 21, 2006, the Debtor made, executed, and delivered to Castle Point Mortgage, Inc. ("Castle Point"), a note in the principal amount of $880,750 (the "Note"), together with the mortgage executed by the Debtor (the "Mortgage"), which Mortgage was delivered to MERS, as nominee for Caste Point. MERS, acting as nominee for Castle Point as lender and as mortgagee of record, recorded the Mortgage on February 15, 2007. Through endorsement of the original note and an assignment of mortgage dated October 22, 2009, the Note and the Mortgage were transferred and assigned to ACT Properties, LLC. The assignment of mortgage to ACT Properties, LLC was recorded on November 24, 2009. ACT Properties, LLC then assigned the Note and Mortgage to Wells Fargo by physical delivery of the original loan instruments on November 20, 2009. This assignment was memorialized by an assignment of mortgage dated June 22, 2011 and duly recorded on July 28, 2011. Since November 20, 2009, Wells Fargo has remained the current holder and continues to have physical possession of the original Note and Mortgage. Copies of each of these documents is attached to the "Relief from Stay Worksheet" filed as Exhibit A to the Wells Fargo Motion.

The evidence submitted to the Court confirms each of these facts, and the Debtor has not submitted any evidence to the contrary. In addition, while the Court has conducted its own examination of the issue, it nevertheless recognizes that the District Court Decision previously considered the identical issue and concluded that Wells Fargo has standing to enforce the Note and Mortgage. The Court's decision on the Motions follows.

**Section 362(d)(1)**

Section 362(d)(1) of the Bankruptcy Code provides that "the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

6

>   (1) For cause, including the lack of adequate protection of an interest in property of such party in interest."

11 U.S.C. § 362(d)(1).

The Condominium asserts that there is sufficient "cause" for relief from the stay here because the Debtor has not provided, nor has she offered to provide, the Condominium with any form of adequate protection to protect against the likely diminution of the value of the Condominium's collateral. The Debtor has made no postpetition payments to the Condominium during her case (as is required), nor has she made a single payment to the Condominium for fees or assessments since mid-2007. With regard to the issue of adequate protection, the Condominium further argues that, if the Debtor is permitted to continue in possession of Units 25E and 25F, the value of the Units likely will continue to deteriorate given her proven failure to maintain them.

Similarly, Wells Fargo asserts that cause exists to lift the automatic stay as a result of the Debtor's inability to remedy the defaults under the terms of the Note. The Debtor has neither made postpetition mortgage payments nor made any payments to Wells Fargo since August 2008. The Debtor has no income stream and has not provided any evidence of her ability to pay the monthly mortgage amount of over $7,000 per month for Unit 25E, let alone the over $10,000 aggregate monthly amount due and owing (i) on the mortgage for Unit 25E and (ii) to the Condominium for the Units.

Accordingly, the Court find that the secured interests of the Condominium with respect to Units 25E and 25F and Wells Fargo with respect to Unit 25E are not adequately protected and "cause" exists to lift the stay under section 362(d)(1).

**Section 362(d)(2)**

The Court also finds that both the Condominium and Wells Fargo are entitled to relief from the stay pursuant to section 362(d)(2) of the Bankruptcy Code. Section 362(d)(2) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>   (A) the debtor does not have an equity in such property; and
>   (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

Section 362(g) of the Bankruptcy Code places the burden of proof on the party requesting relief from the stay to show that the debtor lacks equity in the property, while the party opposing relief bears the burden of proof on all other issues. 11 U.S.C. §§ 362(g)(1), (2). Thus, when a party seeks relief under section 362(d)(2), the movant must show that the debtor lacks equity in the property, and the debtor must then show that the property in question is necessary for an effective reorganization. *See United States Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988). Courts have defined equity as "the difference between the property value and the total amount of liens against it." *In re: YL West 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010) (citation omitted).

### Lack of Equity in Property under Section 362(d)(2)(A)

Under section 362(g), Wells Fargo and the Condominium have the burden of proving the Debtor lacks equity in the property. Here, in her bankruptcy schedules, the Debtor has valued Unit 25E at $1.41 million, and Wells Fargo is asserting a secured claim of over $1.72 million. With respect to Unit 25F, in her schedules, the Debtor has valued the unit at $910,000, and the

Bank of New York has asserted a secured claim of $1.115 million. Neither the secured claim of Wells Fargo with respect to Unit 25E nor the secured claim of Bank of New York with respect to Unit 25F includes the Condominium's secured claims, which the Condominium asserts total over $816,000 for Unit 25E and over $530,000 for Unit 25F. Comparing the Debtor's scheduled values for the Units with the secured claims asserted against the Units, the Court finds that the movants have successfully demonstrated that the Debtor has no equity in the Units.

### Property Not Necessary to an Effective Reorganization Under Section 362(d)(2)(B)

In order to obtain relief from the automatic stay under section 362(d)(2), it must also be established that the Property is not necessary to an effective reorganization. On this point, the Court finds that the Debtor has not established, for purposes of the two pending stay motions, that a reorganization is reasonably in prospect.

Section 362(d)(2)(B) provides that a debtor can defeat a motion for relief from the automatic stay if she can show that such property is necessary for her to achieve an effective reorganization. 11 U.S.C. § 362(d)(2)(B). As the Supreme Court stated in the *Timbers* decision:

> Once the movant under section 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is necessary to an effective reorganization. What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time.

*Timbers*, 484 U.S. at 375-76 (internal citations omitted). Both of the movants argue that there is no prospect for a successful reorganization here because the Debtor has no source of income to fund a confirmable chapter 11 plan. This case has been pending for five months and the Debtor has made no postpetition payments to either Wells Fargo or the Condominium; moreover, the

amounts set forth in her monthly operating reports are insufficient to fund all monthly payments due to her secured creditors even if she chose to do so.

While the Debtor asserts that she will be able to reorganize, she has failed to provide any evidence to meet her burden on this issue. In the two objections she filed to the Motions, the Debtor suggests several paths forward to reorganize, yet each stated option is one that movants have already stated is infeasible. First, the Debtor proposes to move out of her apartments and rent them out to start making payments, but she is unable to demonstrate that the Condominium would consent to this. Second, the Debtor next offers a short sale of Unit 25E, an option that Wells Fargo previously has stated that it would not agree to. Third, the Debtor suggests a loan modification to lower her monthly payment amount owed to Wells Fargo, ignoring the fact that Wells Fargo and the Condominium both filed objections to the Debtor's request for loss mitigation in this case. [Docket Nos. 13 and 17]. Simply put, the Debtor has not provided this Court with any tangible proof to indicate that a reorganization is possible, let alone likely.

Section 362(d) having been satisfied, I find that the Condominium and Wells Fargo are entitled to relief from the automatic stay to continue their prosecution of the foreclosure actions previously commenced with respect to the Units and to commence and prosecute to conclusion any related actions necessary to obtain possession. Because the Court grants the Motions' request for stay relief, it will not address the Condominium's alternative request for dismissal of the Debtor's case.

**NOT FOR PUBLICATION**

**Conclusion**

    For all of the foregoing reasons, the Motions are granted.

    IT IS SO ORDERED.

Dated:  March 8, 2016
New York, New York

                                      /s/ Shelley C. Chapman
                                      UNITED STATES BANKRUPTCY JUDGE